NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

KIMBERLY WEISS,
*Petitioner/Appellant*,

*v.*

LEE WEISS,
*Respondent/Appellee*.

No. 1 CA-CV 16-0504 FC
FILED 10-19-2017

Appeal from the Superior Court in Maricopa County
No. FC2009-050837
The Honorable Jennifer C. Ryan-Touhill, Judge

**VACATED AND REMANDED**

COUNSEL

Berkshire Law Office, PLLC, Phoenix
By Keith Berkshire, Erica L. Gadberry
*Counsel for Petitioner/Appellant*

Tiffany & Bosco, PA, Phoenix
By Tina M. Ezzell
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

---

**J O H N S E N**, Judge:

¶1          Kimberly Weiss ("Wife") appeals the superior court's order modifying spousal maintenance payable by Lee Weiss ("Husband").  She also appeals the court's summary denial of her petition for modification of child support and parenting time and its award of attorney's fees.  For the following reasons, we vacate the order and remand.

## FACTS AND PROCEDURAL BACKGROUND

¶2          The parties' marriage was dissolved in July 2009.  The consent decree of dissolution provided that Husband would make two types of spousal maintenance payments to Wife: (1) a fixed payment of $1,000 per month until May 2018, and (2) a "Monthly Adjustable Payment" of 13% of Husband's W-2 income, adjusted annually until May 2018.  The adjustable payment was subject to modification if Wife received "income in any form," other than her employment income, "that exceeds $26,000 a year."  If Wife received additional income beyond that threshold, Husband's adjustable payment to Wife was to be modified by the court pursuant to Arizona Revised Statutes ("A.R.S.") section 25-319 (2017).[1]

¶3          In May 2014, Husband petitioned to modify spousal maintenance, alleging Wife had received an inheritance of more than $26,000 from her father and therefore met the qualifying condition for the modification of her spousal maintenance award.  Husband further asserted Wife "colluded with her deceased father" to change his will after the decree was entered "in order to hide and delay payment of her inheritance" until after Husband's support obligation had expired.  Wife then filed a petition for modification of child support and parenting time and allocation of expenses for minor children, and asked the court to consider her petition in conjunction with Husband's petition to modify spousal maintenance.

---

[1]          Absent material revision after the relevant date, we cite a statute's current version.

¶4 The superior court *sua sponte* appointed a special master to hear the issues involved in the parties' respective petitions and make findings and recommendations. After ruling on pretrial motions and conducting a ten-hour trial, the master issued a report and recommended rulings that the Monthly Adjustable Payment be reduced to $3,154 from $3,947. The master further recommended that Wife be required to pay $20,000 toward Husband's attorney's fees because she "acted unreasonably at times regarding disclosure and discovery and . . . this unreasonable behavior has caused Father to incur additional attorney fees."

¶5 Wife filed an objection to the special master's report and requested a hearing. Without considering Husband's response, the court denied the request for hearing and issued a ruling further reducing the Monthly Adjustable Payment to $1,000 per month and increasing the attorney's fees award to $30,000. We have jurisdiction over Wife's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. § 12-2101(A)(2) (2017).

## DISCUSSION

### A. Spousal Maintenance Modification.

#### 1. Due-process issue.

¶6 Wife first argues that the superior court violated her due-process rights by appointing the special master without a request from either party. She also asserts that the master was not qualified to decide family law issues and that the court failed to "specify the particular issues" the master was to decide. Wife, however, waived those arguments by failing to raise them in the superior court. *See Pflum v. Pflum*, 135 Ariz. 304, 307 (App. 1982) ("Matters not raised below will not be considered on appeal."). In any event, at the relevant time, Arizona Rule of Family Law Procedure 72(A) (2016) authorized the court to appoint a special master "on [its] own motion" and without a request from either party.[2]

#### 2. *Zale* and the interpretation of a consent decree.

¶7 Wife next argues the master and the superior court both erred by considering evidence of the parties' intent in interpreting the dissolution decree's terms concerning the "Threshold Amount" of income that would render the adjustable payment "subject to modification." The interpretation

---

[2] *See* Order Amending Rule 72, Arizona Rules of Family Law Procedure, R-16-0037 at 3 (Dec. 14, 2016); Rule 72(M) (2017).

of a dissolution decree is a legal issue that we review *de novo*. *Cohen v. Frey*, 215 Ariz. 62, 66, ¶ 10 (App. 2007).

¶8            Although courts may use parol evidence to determine the intent of the parties when interpreting a contract, a dissolution decree is not a contract, but a judgment. As such, a consent decree is "an independent resolution by the court of the issues before it and rightfully is regarded in that context and not according to the negotiated intent of the parties." *In re Marriage of Zale*, 193 Ariz. 246, 249, ¶ 11 (1999); *see also* Ariz. R. Civ. P. 54(a). Therefore, a court interpreting a consent decree applies general rules of construction but does not rely on extrinsic or parol evidence of the parties' intent. *See Zale* at 250, ¶¶ 16–17. Husband cites no case authority to the contrary.

¶9            At issue on Husband's petition to modify maintenance was the following language from the decree:

> Modification of Monthly Adjustable Payment. The Monthly Adjustable Payment is subject to modification for the following reasons:
>
> *            *            *
>
> d. **[Wife's] Additional Income.** Upon [Wife's] receipt of income other than her employment income *in any form* (*including without limitation* income from other employment, gifts, *inheritances*, or direct payments by another person to [Wife] or to third parties on [Wife's] behalf towards the minor children's and [Wife's] living expenses), that exceeds $26,000 a year (the "$26,000 Threshold Amount").

 (Emphasis added.) The master and the superior court both concluded that Wife's inheritance from her father constituted additional income that exceeded the $26,000 Threshold Amount.

¶10            Wife acknowledges that the decree specifically includes "inheritances" as a form of income that may trigger a modification of spousal maintenance. She argues, however, that the decree's reference to "income *from* . . . inheritances" does not include a lump-sum inheritance, but instead means a recurring payment *from* an inheritance, or an amount generated *from* the investment of an inheritance. As support, Wife cites a dictionary definition of "income" as "money or other form of payment that one receives, [usually] periodically." Black's Law Dictionary (10th ed. 2014). But the decree likewise refers to "income *from* other employment,

gifts, . . . or direct payments by another person," a construction that undercuts Wife's contention that the decree does not treat an inheritance as income subject to the $26,000 Threshold Amount.

¶11          Wife also cites cases that address whether investments or one-time capital gains or insurance settlements should be treated as income for purposes of child support. The cases Wife cites do not control here, when the decree specifically defines "income" to include "inheritances," which by their nature often are a one-time event. Moreover, although the parties dispute whether Wife as a practical matter could access money in one of the accounts that was to be held in trust for her until 2018, we need not determine that issue because Wife admitted during the hearing before the special master that when her father passed away in January 2014, she became the sole owner of a joint account containing a little more than $76,000, which she then transferred to various accounts. As a matter of law, under the decree, Wife's receipt of that amount was more than sufficient to trigger Husband's ability to request a modification of the monthly adjustable payment.[3]

### 3.     Redetermination of spousal maintenance.

¶12          Having concluded that Husband had demonstrated that Wife had "qualifying income" that exceeded the $26,000 Threshold Amount, the master proceeded under the decree to determine whether spousal maintenance should be modified pursuant to A.R.S. § 25-319 (2017). The master noted evidence that Wife's annual employment income had risen to $84,000 since the decree was entered, and Husband's income had fallen to $361,000. He then made the following additional findings:

- [Wife] is still in need of financial assistance to meet her reasonable needs. That said, the [inheritance] . . . and [Wife's] increased employment income make [Wife]

---

[3]          In addition to the $76,000 in the joint account to which Wife succeeded after her father's passing, the special master also found that Wife received income of no less $24,667 in one trust account and an interest in another $185,000 held in trust for her until December 1, 2018. The master concluded that even though the $185,000 could not be released to Wife until beyond the date specified in the decree, her interest in that trust "became vested and was neither contingent nor speculative," meaning that she "could sell or encumber" her interest in the trust. According to the master, however, his findings with regard to the two trusts did not affect his recommendation that spousal maintenance be reduced to $3,154.

less in need of such financial assistance than she was when the Decree was entered in 2009.

- [Husband] retains the ability to meet his needs and to assist [Wife] in meeting her needs. That said, in light of his decrease in income, [Husband's] ability to do so has lessened somewhat since entry of the Decree.

- . . . [A]t the hearing, [Husband] contended that the Monthly Adjustable Payment should be decreased dollar for dollar for all qualifying income above the Threshold Amount. Had the money received and to be received by [Wife] been part of a stream of annuity payments or guaranteed annual gifts, [Husband's] argument would be more persuasive.

- It is true that the qualifying income relied on by [Husband] is in the nature of a series of one time events. That said, the Master finds that this income has changed [Wife's] financial circumstances in a substantial and continuing way.

- After having considered all of the factors in Section 25-319 and based on all of the facts and circumstances presented, the Master finds that the Monthly Adjustable Payment should be modified and reduced to $3,154.

- Assuming for the sake of discussion that [Wife's] portion of the trust funds does not constitute qualifying income, the Master's decision would not change. Whether or not the funds from the trust are deemed to be qualifying income, the above discussed funds that have flowed and will flow to [Wife] will have the same impact on [Wife's] financial circumstances.

### 4. The superior court's order.

¶13 Wife objected to the master's report. Although Husband filed a response to Wife's objection, the superior court ruled the response untimely and did not consider it. When a party objects to a special master's report, Rule 72(G) allows the superior court to "set oral argument on the objection(s), adopt the report, modify it, reject it in whole or in part or . . .

receive further evidence." In a case such as this, when the parties have not stipulated to accept the master's findings, the court reviews the master's findings of fact only for clear error, based on the record before the master. *See* Rule 72(H) ("[T]he court shall not reverse the special master's findings of fact unless clearly erroneous and shall review conclusions of law *de novo*.").

¶14 In ruling on Wife's objection to the master's report, the superior court agreed with the master's conclusion that Husband had established that the $26,000 Threshold Amount was established, rendering spousal maintenance subject to modification. The court also agreed with the master that Wife's monthly employment income was about $7,000. Together with child support of $660 and the non-modifiable spousal support payment of $1,000, the court noted that Wife's monthly income accordingly totaled about $8,660 before any modifiable component of spousal maintenance.

¶15 The court parted with the master, however, on the issue of Wife's reasonable expenses. Wife testified before the special master that her reasonable monthly expenses were $12,000, and Husband did not cross-examine her about that issue. Although the master made no express finding concerning Wife's reasonable expenses, his award of $3,154 in spousal maintenance suggests that he accepted Wife's testimony and found her reasonable monthly expenses to be on the order of $12,000 (i.e., $8,660 + $3,154 = $11,814). Wife objected to the master's finding, arguing that he should have made an express finding that she had reasonable monthly expenses of $12,000.

¶16 Without addressing Wife's contention that the master should have made such an express finding, the superior court's order extensively critiqued Wife's most recent affidavit of financial information ("AFI"), dated December 5, 2015, which listed monthly expenses, net of legal fees, of roughly $15,000. The court found the expenses listed in the AFI "overinflated" and concluded that Wife's "necessary monthly expenses total $10,000.00." On that basis, and without acknowledging the "clearly erroneous" standard of review specified in Rule 72(H), the superior court then rejected the master's findings modifying monthly child support to $3,154, and instead ordered monthly spousal support reduced to $1,000.

¶17 The court's factual finding that Wife "only requires a limited amount of assistance from [Husband] to pay reasonable expenses in full" seems to have been based primarily on the court's critique of the recent AFI. But there is no indication from the record that the master relied on that AFI

in making his recommendation.  Although the AFI was in evidence before the master, it was not the subject of any substantive examination or argument during the master's hearing.  Beyond that, the master did not embrace or even reference the AFI in his findings; indeed, by finding that spousal maintenance should be reduced commensurate with reasonable expenses of only about $12,000 a month, the master, like the court, impliedly rejected the AFI.

¶18        More generally, in rejecting the master's recommended award, the superior court did not identify any finding of fact by the master that it determined to be clearly erroneous.  To the contrary, the court ruled that the master's report sufficiently "addresses the factors under A.R.S. § 25-319."  On this record, we cannot discern whether the superior court's rejection of the master's recommended modification of spousal maintenance was based on a finding by the court, supported by the evidence, that the master made a clear error.  For that reason, we vacate the court's order rejecting the master's recommended spousal maintenance award and remand for reconsideration of Wife's objections to the master's report.[4]

## B.        Child Support and Parenting Time.

¶19        The special master recommended granting Wife's request for a change in parenting time and concluded that the superior court should decide whether a change in child support should be made.  The superior court did not specifically address Wife's petition to modify child support and parenting time, but generally denied "any affirmative relief sought before the date of this Order that is not expressly granted above."  Neither party objected to the master's recommended change in parenting time, and Husband agrees with Wife on appeal that the superior court now should address whether child support should be modified.  We agree with both

---

[4]        Wife also argues the court erred by referring in its order to a 2014 AFI that was not before the special master.  The superior court only referred to the 2014 AFI in a footnote, suggesting the court did not materially rely on the outdated AFI in overruling the master's recommendation.  Wife further argues that the superior court's order impermissibly required her to use a portion of her "nest egg" to supplement her income sufficiently to meet her reasonable expenses.  Without accepting the factual or legal premises of Wife's argument, we need not address that contention in view of our decision to grant her request to remand the matter to the superior court.

parties that, on remand, the superior court should consider whether child support should be modified.

## C.    Attorney's Fees.

¶20        The master recommended that Wife pay $20,000 of Husband's attorney's fees because of what the master characterized as her "unreasonable behavior." The superior court found that the master's report adequately "addresses the basis for attorney's fees" award. Nevertheless, and even though Husband did not object to the fees recommended by the master as insufficient, the superior court increased the award to $30,000, citing specific instances in which the court found Wife had lied or otherwise acted unreasonably, thereby expanding the litigation and increasing the associated costs. The court also stated it was "extremely cognizant of the disparity in income, which is the primary reason [it] has not ordered more than $30,000.00 to [Husband]." Wife argues the superior court erred in overruling the master's fee award.

¶21        When the superior court referred the spousal maintenance issue to the special master, it granted the master the power to "make findings of fact, recommendations and conclusions of law on any and all disputes between the parties concerning (discovery) (evaluation of the business known as) (specify other financial issues)." Included within that broad grant of authority was the power to resolve the parties' respective attorney's fees claims arising out of Husband's petition to modify spousal maintenance. Therefore, under Rule 72(H), after the master recommended an award of fees, the superior court could overrule the award only if it found the master's award clearly erroneous.

¶22        The superior court made no such finding. Moreover, our record does not disclose whether the events that the superior court cited in overruling the master's award were before the master when he ruled. Therefore, we vacate and remand the fees award for reconsideration by the superior court.[5]

---

[5]        In increasing the attorney's fees award, the superior court found Wife lied several times to Husband about the inheritance and also found Wife "instructed or intimated" her father's probate lawyer to structure her father's estate-planning in a way that would allow her to avoid receiving income before the 2018 date specified in the decree. Although Wife's lies subject her to a fees sanction under A.R.S. § 25-324, the superior court erred to the extent that it sanctioned Wife merely for working with her father's

**CONCLUSION**

**¶23**        For the foregoing reasons, we vacate the superior court's order overturning the special master's report and recommendations and remand for further proceedings.  Both parties have requested attorney's fees on appeal pursuant to A.R.S. § 25-324 (2017).  In our discretion, we deny both requests, but grant Wife her costs of appeal, contingent on compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

probate attorney to structure her father's estate in a manner that would avoid the $26,000 Threshold Amount.